JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JIM S. MATHY,<br><br>    Plaintiff,<br><br>  v.<br><br>CHASE MANHATTEN BANK, USA, et al.,<br><br>    Defendants.<br>_____<br>CHASE BANK USA, N.A.,<br><br>    Counterclaimant,<br><br>JIM S. MATHY,<br><br>    Counter-defendant.<br>_____ | Case No. EDCV 08-571 VAP (AJWx)<br><br>MEMORANDUM OPINION AND FINDINGS OF FACT & CONCLUSIONS OF LAW<br>[F. R. CIV. PROC. 52] |

    Counterclaimant Chase Bank USA, N.A.'s counterclaims for breach of written contract, and common count - money had and received, were tried to the Court on October 20, 2009. Having considered all the evidence admitted

at trial, the arguments of counsel, and all the briefing submitted by the parties, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, and issues its decision below.

**FINDINGS OF FACT**

1. Counterclaimant Chase Bank USA, N.A. ("Chase Bank") is a national banking association and is the successor-in-interest to First USA Bank, N.A., and Bank One, Delaware, N.A. (Chase Bank, First USA Bank, N.A. and Bank One, Delaware, N.A. are referred to as "the issuer" in this Opinion.) Chase Bank issues credit cards. (Counterclaim ¶ 2.)
2. Counterdefendant Jim S. Mathy ("Mathy") applied for a credit card from Chase Bank's predecessor-in-interest, First USA, on December 15, 1995. (Exh. 1; Final Pretrial Conference Order ("PTCO" ¶ 5 ("Admitted Facts") (a)).) In his application, he requested an additional credit card for an "authorized user," his wife Patricia Mathy. (Id.)
3. First USA issued a credit card, account number ending 7353 ("the credit card" or "the account"), to Mathy on December 31, 1995, with an additional card issued to Patricia Mathy as an "authorized user." (Exh. 5; PTCO ¶ 5(b).) The Cardmember Agreement ("the Agreement") constituted the valid agreement between the issuer and Mathy regarding the account. (Exh. 16.)
4. Mathy was the sole account holder liable on the account during the time it was open, (PTCO ¶ 5(c)), and he understood he was responsible for any charges Patricia Mathy incurred on the account.

5. The Agreement required Mathy, in pertinent part:
   a. to notify the issuer, in writing, if he disputed a bill or needed more information regarding any transaction on his account, "no later than 60 days after [the issuer] sent [Mathy] the first bill on which the error or problem appeared;" (Exh. 16) and
   b. to inform the issuer "promptly in writing of any change in [his] address" (id.); and
   c. to pay [the issuer] for all of the Purchases and Cash Advances "made or obtained by you or anyone you authorize to use [the] Card or Account," "plus any Finance Charges assessed on [his] Account and any other charges and fees which [he] may owe [the issuer] under the terms of [the Agreement]." (Id.)
6. At all times relevant to this action, Mathy resided in Alta Loma, California and from the time the account was opened in 1995 until March, 2003, the billing address for the account was his residence address in Alta Loma. (Exh. 17.)
7. In March, 2003, the billing address for the credit card account was changed from the Alta Loma address to a Post Office box in Rancho Cucamonga, California. (The Rancho Cucamonga address was Patricia Mathy's address after she and Mathy separated during their divorce proceedings the following year. See Exh. 3.) This change was not effected through a telephone call to the issuer, nor through a written request separate from a billing statement. The only other method by which a change of address could have been made in 2003 was by a notation on the reverse side of the billing statement when returned with a payment.

8. Mathy occasionally used the credit card to make purchases during the first few months after he obtained it, but after that time he did not use the card, nor did he review the monthly billing statements associated with it. He knew that Patricia Mathy used the credit card as an authorized user, however, and that she reviewed the monthly statements and made payments on the account.

9. During the time the account was open and active, Mathy never informed Chase Bank that the change of address to the Rancho Cucamonga Post Office Box was invalid, or that he wanted the billing statements sent to any other address.

10. Patricia Mathy filed a petition for dissolution of marriage on August 30, 2004. (Exh. 4.) She and Mathy separated on or about August 25, 2004, (PTCO ¶ 5d), and a Judgment of dissolution was filed January 3, 2005. (Exh. 4.)

11. Following the entry of the dissolution judgment, Patricia Mathy retained the credit card issued to her as an authorized user, and continued to incur charges on it. (PTCO ¶ 5(e).) Mathy never asked Patricia Mathy to return her credit card to him or to Chase Bank, nor did he ask her if she was still using the credit card.

12. Mathy testified he called Chase Bank and requested that Patricia Mathy be removed from his account as an authorized user. His testimony on this subject is conflicting, however. In his deposition, he testified that he made this call "after his divorce"; in the notes he prepared in 2007, he stated he called the bank on November 30, 2004; at trial he testified he made the call in either August or October, 2004. If he had called – at any of those times -- the Chase Bank customer service representative would have asked him to confirm the billing address for

1
2
3
4
5
6
the account, and the change to Patricia Mathy's Rancho Cucamonga address would have been discovered. Moreover, even if he made a call to Chase Bank, Mathy admitted he never asked where billing statements were being sent, although he knew Patricia Mathy had used the credit card and admitted he had not received a billing statement in years. To summarize, Mathy testified:

7
8
9
- He knew he was liable for Patricia Mathy's charges on the account as he had made her an authorized user in 1995 when he applied for and opened the account;

10
11
- He knew Patricia Mathy used the credit card to make purchases on the account;

12
13
14
15
- He did not use the credit card himself and had not reviewed the billing statements since a few months after opening the account in 1995, although he knew Patricia was charging items on the account;

16
17
18
19
20
- At the time of the couple's separation and divorce, Mathy was aware that Patricia owed approximately $35,000 in credit card debt, and although he did not ask her about the details of the debt, he knew that apart from two department store credit cards, the Chase Bank card was the only credit card she held;

21
22
23
24
- A provision of the couple's dissolution agreement required Patricia Mathy to pay all credit card debt in full, but Mathy did not inquire whether she did so or ask for any written confirmation that she had done so;

25
26
27
28
13. In other words, Mathy knew his wife had used the credit card, he knew at the time of their separation she had approximately $35,000 in credit card debt, he knew she was an authorized user on the account where

|    |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                 |
|----|-----|-----|

1  he was the only liable account holder, and yet he testified he was not
2  concerned by the failure to receive billing statements for several years,
3  because he believed that the account was "dormant," i.e., nothing was
4  owed, although he had never asked Patricia Mathy any questions at all
5  about whether she had paid off the balance with the money allotted to
6  her during the dissolution for that purpose.
7  14. Mathy did not notify Chase Bank promptly that the address where the
8  account statements were sent, the Post Office box in Rancho
9  Cucamonga, was incorrect, as required under the Agreement.
10 15. Furthermore, Mathy did not inform Chase Bank that he wanted to
11 rescind Patricia Mathy's status as an authorized user on the account.
12 The Court does not find credible Mathy's testimony that he called
13 Chase Bank in the fall of 2004 and asked to have Patricia Mathy
14 removed as an authorized user on the account.  Even if Mathy did call
15 the bank, however, he still breached the terms of the User Agreement,
16 however, and is liable for the charges made by Patricia Mathy, for the
17 following reasons.
18 15. If Mathy called and asked Chase Bank's customer representative to
19 remove Patricia Mathy from the account, and through error or
20 negligence on the bank's part, this change was not made to Mathy's
21 account, any charges after the date of Mathy's call would have been
22 "disputed charges."  Under the terms of the Agreement, Mathy was
23 required to inform Chase Bank in writing of any disputed charges.
24 (Exh. 16.)  He admitted he never informed the bank of any disputed
25 charges made by Patricia Mathy within 60 days of the charges'
26 appearance on the billing statements, as required under the
27 Agreement.   His argument that he was excused from doing so because
28

1    he believed the account to be dormant as he had not received
2    statements fails, in light of the testimony summarized above, i.e., he
3    had not troubled to review the billing statements since approximately
4    1996 despite his knowledge that Patricia Mathy regularly used the
5    credit card.

6  16.  The credit card account became delinquent on February 21, 2007, and
7    in 2007, the overdue balance of $41,080.49 was charged off by Chase
8    Bank. (PTCO ¶ 5(f).)

## CONCLUSIONS OF LAW

11  1.  At the time this case was removed to this court from the California Superior Court for the County of San Bernardino, the First Amended Complaint pled claims under the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 and the Fair Credit Reporting Act, 15 U.S.C. § 1681. Therefore, the Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. The First Amended Complaint also pled claims under California law, over which the Court had pendent jurisdiction pursuant to 28 U.S.C. § 1367.

19  2.  Chase Bank's Counterclaim pled two claims under California law, over which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, despite the dismissal of the claims in the First Amended Complaint upon entry of summary judgment in Defendants' favor on May 19, 2009.

24  3.  The alleged acts of Counterdefendant Mathy giving rise to the claims pled in the Counterclaim occurred within the jurisdiction of the Central District of California, and the Court applies the California substantive law of contract. 28 U.S.C. §§ 1346(b), 2674.

### A. Breach of Contract

4. A party seeking to recover for breach of contract must prove (1) the existence of the contract; (2) its performance under the contract or excuse for any nonperformance; (3) the other party's breach of the contract; and (4) the resulting damages it suffered. CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).

5. Chase Bank proved, by a preponderance of the evidence, each of the elements of its breach of contract claim against Counterdefendant Mathy for breach of contract. See Finding of Fact Nos. 3 and 5 (existence of the contract and Chase Bank's performance thereunder); 9, 12, 13, 14, 15, and16 (Mathy's breach and resulting damages), above.

6. A party suing for breach of contract has the burden of proving its damages by a preponderance of the evidence. Carpenter Foundation v. Oakes, 26 Cal. App. 3d 784, 799-800 (1972); Cal. Civ. Code § 3301.

7. Chase Bank suffered damages of $41,080.49 plus interest at the rate agreed upon under the User Agreement to the date of judgment. Chase Bank is also entitled to its reasonable attorney's fees in its counterclaim for breach of contract.

### B. Common Count – Money Had and Received

8. "The common count of money had and received is available in quasi-contract actions 'to recover money paid under mistake, fraud or coercion where no contractual relationship is involved. [Citation.]'" Supervalu v. Inc. v. Wexford Underwriting Managers, Inc., 175 Cal. App. 4th 64, 78 (2009) (citing 4 Witkin, Summary of Cal. Law (10th ed. 2005), Contracts, § 561, at p. 688.) There exists here a valid contract

between the parties, Exh. 16, see Finding of Fact Nos. 3, 5, so this is not a quasi-contractual relationship.

9. Although the California Court of Appeal in Supervalu acknowledged the existence of a contract does not always bar quasi-contract relief, "the remedy [of a claim for money had and received] is available in a variety of other situations," id. at 79, it held the existence of a fraudulent statement or representation by the defendant is an essential element of the cause of action. Id., citing Minor v. Baldridge, 123 Cal. 187 (1898). Counterclaimant Chase Bank did not prove by a preponderance of evidence that Counterdefendant Mathy made a fraudulent statement or representation to it. Accordingly, it is not entitled to recover under its alternative theory, money had and received.

For the reasons set forth above, Counterclaimant Chase Bank is entitled to judgment in its favor on its counterclaim for breach of contract.

Dated: October 26, 2009

*/s/ Virginia A. Phillips*
VIRGINIA A. PHILLIPS
United States District Judge